**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JM:DCW
F.#2009R01834

*271 Cadman Plaza East, 4ᵗʰ Floor*
*Brooklyn, New York  11201*

January 30, 2012

BY HAND AND ECF

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

             Re:  United States v. Fernando Lahoz
                  Criminal Docket No. 09-CR-847 (ENV)

Dear Judge Vitaliano:

          On December 3, 2010, the defendant Fernando Lahoz pled
guilty pursuant to a plea agreement to Counts Two and Three of
the Indictment in the above-referenced case.  In Count Two, the
defendant was charged with access device fraud, in violation of
18 U.S.C. § 1029(a)(1).  In Count Three, the defendant was
charged with aggravated identity theft, in violation of 18 U.S.C.
§ 1028A(a)(1).  The defendant is scheduled to be sentenced by
Your Honor on Friday, February 3, 2012.

          On October 3, 2011, the Probation Department issued a
Presentence Investigation Report ("PSR"), which indicated that
the defendant's Guideline range was 21 to 27 months in custody.
See PSR at ¶ 90.  Moreover, as to Count Three, a sentence of 24
months custody must be imposed to run consecutive with the
sentence imposed on Count Two.  Id.  The government concurs with
the analysis set forth in the PSR.

          The government submits that the sentencing factors
outlined in 18 U.S.C. § 3553(a) suggest that a Guidelines
sentence is appropriate in this case.

I.   Factual Summary

          In or about and between June 2009 and August 2009, the
defendant Fernando Lahoz, and others he recruited, manufactured
and used counterfeit credit cards.  In furtherance of this
scheme, the defendant and others stole credit card account

-2-

information from real credit card holders through the use of a small electronic instrument called a "skimmer device." For example, the defendant provided a skimmer device to a cashier at a Tommy Hilfiger store in lower Manhattan and paid the cashier to use the device on his behalf. The cashier attached the skimmer device to his belt with velcro and swiped the credit cards of unsuspecting customers through the skimmer device thereby capturing real customer credit card account information in the memory of the skimmer device. The defendant later downloaded the stolen credit card account information from the skimmer device onto his computer.

In order to use the stolen credit card account information, the defendant and his cohorts wired money overseas to purchase plastic cards. When these plastic cards arrived in the United States, they looked similar to legitimate Visa or Mastercard credit cards. However, the plastic cards were not embossed, meaning that unlike real credit cards, they did not bear raised account numbers or account holder names. Additionally, the plastic cards were initially unencrypted, meaning that pertinent account information had not been downloaded onto the magnetic strip on the back of the cards.

After receiving the plastic cards, the defendant converted them into counterfeit credit cards. First, the defendant used a device called an "embosser" to etch stolen account numbers on the face of the cards. He also etched the names of his cohorts onto the cards as the purported account holders. Next, the defendant used an instrument called an "encoder" or a "reader/writer" to encrypt the plastic cards by downloading stolen credit card account information from a computer onto the magnetic strip on the back of the plastic cards. After completing this process, the defendant and others used the counterfeit credit cards to conduct fraudulent transactions in the accounts of real credit card holders.

II.   <u>The Nature of the Offense and Characteristics of the Offender</u>

The nature of the offense to which the defendant pleaded guilty is serious. <u>See</u> 18 U.S.C. § 3553(a)(1). The defendant stole credit card account information from unsuspecting victims, particularly foreign tourists visiting the United States, and then used that information to run up thousands of dollars of fraudulent credit card charges. In so doing, the defendant not only caused harm to multiple people and financial institutions, but he also undermined both the tourism industry in New York, and consumer confidence in the security of credit

transactions.  Given the seriousness of the defendant's crimes, only a Guidelines sentence would adequately deter future offenders.

Additionally, the defendant's "history and characteristics" include recurring criminal activities and demonstrate a disregard for the law.  See 18 U.S.C. § 3553(a)(1).  On October 14, 2006, the defendant was convicted of disorderly conduct in Queens after he punched a car service  employee in the head.  PSR at ¶ 47-48.  Moreover, after his arrest in this case and while the defendant was on bail, the defendant was arrested in Manhattan for obstructing government administration, harassment, disturbing the peace and resisting arrest.  PSR at ¶ 50-51.  During that incident, the defendant allegedly claimed that he owned firearms and threatened to shoot a police officer.  Id.  Also following his arrest and while he was on bail in this case, the defendant was arrested in New Jersey after he went to a Walmart and tried to use a counterfeit $100 bill to purchase a DVD player.  At the time of his arrest in New Jersey, the Court had specifically ordered the defendant not to leave New York.  Given the defendant's demonstrated disregard for the law and Court orders, a Guidelines sentence is appropriate in this case.

III. The 3553(a)(2) Factors Suggest that a Guidelines Sentence is Appropriate in this Case

The factors outlined in 18 U.S.C. § 3553(a)(2) also demonstrate that a Guidelines sentence is appropriate in this case.  First, given the nature of the offense and the defendant's disregard for the law as demonstrated by his post-arrest conduct, only a Guidelines sentence would "promote respect for the law" and "provide just punishment" in this case.  18 U.S.C. § 3553(a)(2).

Additionally, adequate punishment, deterrence and protection of the public all call for a Guidelines sentence.  The defendant would certainly not be deterred if he receives less than a Guidelines sentence.   Indeed, a non-Guidelines sentence may send a message to others that credit card fraud and identity theft are not serious offenses and would do little to nothing to deter others from committing such crimes in the future.  Id.

-4-

IV.  Conclusion

        A Guidelines sentence is reasonable and appropriate in
this case.  Thus, the Court should sentence the defendant within
the applicable advisory Guidelines range of 21 to 27 months'
imprisonment.


                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney


                        By:   /s/_____
                              David C. Woll, Jr.
                              Assistant U.S. Attorney
                              (718) 254-6241

cc John S. Wallenstein, Esq.